# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

AVERN LEE BURNSIDE,

                Petitioner,            Case Number: 2:16-CV-13358
                                           HONORABLE VICTORIA A. ROBERTS

v.

SHERMAN CAMPBELL,

                Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

Petitioner Avern Burnside filed a *pro se* habeas corpus petition under 28 U.S.C. §

2254. He challenges his Genesee County Circuit Court convictions for assault with intent

to murder, Mich. Comp. Laws § 750.83; carrying a concealed weapon, Mich. Comp.

Laws § 750.227(2); felon in possession of a firearm, Mich. Comp. Laws § 750.224f;

discharging a weapon from a vehicle, Mich. Comp. Laws § 750.234a; and possession of

a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b. Respondent

argues several of Petitioner's claims are procedurally defaulted and that all of his claims

are meritless. The Court denies the petition.

## I.     Background

Petitioner's convictions arise from a shooting in Flint, Michigan. The Michigan

Court of Appeals provided this summary of the testimony presented at trial:

      The prosecution presented evidence at trial to establish that at

approximately 12:30 p.m. on July 30, 2009, defendant was driving a black SUV on Court Street in Flint, Michigan while physically assaulting his girlfriend, Leah Watson, who was sitting in the front passenger seat. Antwyne Ledesma was driving on the same road and witnessed defendant's conduct. When the two cars pulled up to a red light, Ledesma, whose windows were down, yelled "leave her alone; you're not f***in' right." Meanwhile, Watson was screaming, hollering, and asking for help. When the light turned green, instead of turning left, as he was in the left turn lane to do, defendant continued on Court Street and followed Ledesma. Defendant pulled alongside Ledesma's car and fired two shots at her. Ledesma's car was struck by one bullet, but she escaped uninjured.

*People v. Burnside*, No. 309807, 2014 WL 1515265, *1 (Mich. Ct. App. Apr. 17, 2014).

A jury in Genesee County Circuit Court found Petitioner guilty and he was sentenced as a fourth habitual offender to 20 to 40 years for the assault with intent to murder conviction, 2 years for the felony-firearm conviction, and 2-1/2 to 15 years each for the carrying a concealed weapon, discharging a firearm from a vehicle, and being a felon in possession of a firearm convictions.

The Michigan Court of Appeals affirmed Petitioner's convictions. *People v. Burnside*, No. 309807, 2014 WL 1515265, *1 (Mich. Ct. App. Apr. 17, 2014), *lv. denied* 497 Mich. 889 (Mich. Oct. 28, 2014). Petitioner filed a motion for relief from judgment, which the trial court denied. *See* 7/14/15 Op. & Ord., ECF No. 11-38. The Michigan Court of Appeals denied leave to appeal, *People v. Burnside*, No. 328495 (Mich. Ct. App. Sept. 15, 2015), as did the Michigan Supreme Court, *People v. Burnside*, 499 Mich. 967 (Mich. June 28, 2016).

Now before the Court is Petitioner's habeas corpus petition, raising the following grounds for relief:

I.      Petitioner's due process rights were violated and he is entitled to a
        new trial based on newly discovered evidence, where the prosecutor
        knowingly used perjured testimony from Leah Watson, whose
        testimony was based on threats and intimidation.

II.     The trial court denied Petitioner a fair trial by admitting some
        irrelevant and unfairly prejudicial transcripts of some alleged phone
        conversations purported to be between Leah Watson and Petitioner
        that were not sufficiently authenticated and were not trustworthy.

III.    Petitioner is entitled to a new trial where the verdict is against the great
        weight of the evidence, and it would be a denial of due process and a
        miscarriage of justice to allow Petitioner's convictions to stand.

IV.     Petitioner was denied both his state and federal constitutional rights
        to effective assistance of trial counsel, where counsel failed to
        compel the prosecution to hand over the exculpatory phone calls
        from the Genesee County jail, and counsel failed to let Petitioner
        hear the phone recordings.

V.      Petitioner was denied his right to effective assistance of appellate
        counsel on his only appeal of right when counsel failed to raise trial
        counsel issues of error, and failed to raise the preserved issues.

VI.     The trial court abused its discretion when it permitted police
        Sergeant Brown to testify over defense objection, that Leah Watson
        presented "the classic case of somebody that was a victim of
        domestic violence."  The admission of this improper syndrome
        testimony invaded the province of the jury and deprived Petitioner of
        his due process right to a fair trial.

VII.    The cumulative effect of the prosecutor's misconduct denied
        Petitioner a fair trial.

VIII.   Trial counsel's ineffectiveness in failing to object to the prosecutor's
        repeated instances of misconduct denied Petitioner a fair trial.

IX.     The trial court reversibly erred in overruling the defense objection to
        the admission of evidence alleging that Petitioner assaulted Leah
        Watson in 2005, as that evidence had minimal if any relevance to the
        question of Petitioner's alleged intent in the case at bar; the defense

had not put into issue the intent question at the point the prosecution
introduced the evidence, contrary to the court's pretrial ruling, and
even if relevant the evidence was more prejudicial than probative
under MRE 403.

X.     Petitioner was denied his Sixth Amendment right to a speedy trial,
alternatively, defense counsel was ineffective by his failure to file a
motion to dismiss on those grounds.

XI.    Cumulative effect of alleged errors denied Petitioner a fair trial.

## II.    Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death Penalty

Act of 1996 ("AEDPA"). Under the AEDPA, a state prisoner is entitled to a writ of

habeas corpus only if he can show that the state court's adjudication of his claims –

(1) resulted in a decision that was contrary to, or involved an unreasonable
application of, clearly established Federal law, as determined by the
Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination
of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the

state court arrives at a conclusion opposite to that reached by the Supreme Court on a

question of law or if the state court decides a case differently than the Supreme Court has

on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405

(2000). An "unreasonable application" occurs when "a state court decision unreasonably

applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 408. "[A]

federal habeas court may not issue the writ simply because that court concludes in its

independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

"AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n. 7 (1997); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). "[A] habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of th[e Supreme] Court." *Id.*

A state court's factual determinations are entitled to a presumption of correctness on federal habeas review. See 28 U.S.C. § 2254(e)(1). The presumption may be rebutted with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## III.    Discussion

### A.    Prosecutorial Misconduct (Claims I & VII)

Petitioner alleges several instances of prosecutorial misconduct: (i) the prosecutor

knowingly presented perjured testimony; (ii) the prosecutor's opening statement was argumentative; (iii) the prosecutor vouched for the victim's credibility; and (iv) the prosecutor elicited irrelevant testimony from Sergeant Brown. He also argues that the cumulative effect of these errors denied him a fair trial. Respondent argues that these claims are procedurally defaulted. Procedural default is not a jurisdictional bar to review of a habeas petition on the merits. *Trest v. Cain*, 522 U.S. 87, 89 (1997). "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). The Court finds it is more efficient to proceed to the merits of these claims.[1]

The controlling Supreme Court decision governing prosecutorial misconduct claims is *Darden v. Wainwright*, 477 U.S. 168 (1986). Under *Darden*, a prosecutor's improper comments violate a criminal defendant's constitutional rights if they "'so infect[] the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.*, at 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). To constitute a due process violation, the prosecutor's conduct must have been "so egregious so as to render the entire trial fundamentally unfair." *Byrd v. Collins*, 209 F.3d 486, 529 (6th Cir. 2000) (citations omitted).

      1.      Leah Watson's Testimony

---

[1] Respondent alleges several other claims are procedurally defaulted as well. The Court finds it is also more efficient to proceed to the merits of these claims.

First, Petitioner argues that the prosecutor committed misconduct when she knowingly presented perjured testimony from the victim, Leah Watson. Petitioner presents an affidavit executed by Leah Watson on May 13, 2014 to support his claim. 5/13/2014 Affidavit, ECF No. 14, Pg. ID 66-67.

At trial, Watson identified Petitioner as the person who shot in the direction of Ledesma's car. In contrast, in her affidavit, Watson claims that another man, known to her as "Ty", shot at the victim's vehicle. She states that police pressured her into implicating Petitioner and that she did so only to stop police harassment. *Id.*

The Genesee County Circuit Court, the last court to address the merits of this claim, found Watson's affidavit unpersuasive. *See* 7/14/2015 Ord. at 2, ECF No. 11-38 at Pg. ID 1118. The state court noted Watson's testimony vacillated from the outset and that her inconsistencies were well-known. Defense counsel cross-examined Watson about these inconsistencies and asked Watson which of her multiple "versions" of the truth she would testify to at trial. The state court held that the prosecutor simply asked Watson to tell the truth and denied this claim. *Id.*

The "deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with rudimentary demands of justice." *Giglio v. United States*, 405 U.S. 150, 153 (1972) (citations and internal quotations omitted). This rule applies to both the solicitation of false testimony and the knowing acquiescence in false testimony. *Napue v. Illinois*, 360 U.S. 264, 269 (1959). In order to prove this claim, a defendant must show that (1) the evidence the prosecution presented was false; (2) the prosecution

knew it was false; and (3) the false evidence was material. *United States v. Hawkins*, 969 F.2d 169, 175 (6th Cir.1992).  Petitioner fails to satisfy any of these requirements.

Watson's testimony was inconsistent and she was a reluctant witness.  But "mere inconsistencies" in testimony do not establish a prosecutor's knowing use of perjured testimony.  *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998).  At trial, Watson identified her fear of Petitioner as the reason for her inconsistent testimony.  Defense counsel adequately probed Watson's credibility on cross-examination.  The jury was properly left to evaluate Watson's credibility.  Petitioner fails to show that Watson's trial testimony was false or that the prosecutor was aware it was false.  The trial court's decision denying Petitioner's claim was not contrary to or an unreasonable application of *Darden*.

2.    Opening Statement

Petitioner argues that the prosecutor committed misconduct by presenting an argumentative opening statement.  The prosecutor, focusing on the intent element of assault with intent to murder, stated "Think about shooting into a car with somebody driving right next to you. Why would you do that if you didn't mean to kill 'em?" 2/23/12 Tr. at 13, ECF No. 11-34, Pg. ID 767.  The prosecutor also stated: "Just because the Defendant was a bad shot and didn't hit her doesn't mean he didn't mean to kill her." *Id.* at 12, Pg. ID 766.

The Michigan Court of Appeals held the opening statement was not improper because the prosecutor's statements were supported by evidence produced at trial, were not excessively inflammatory, and the trial court specifically instructed the jury that the

opening statements were not evidence. *Burnside,* 2014 WL 1515265 at *4.

The state court's holding is a reasonable application of *Darden.* The prosecutor devoted much of her opening statement to outlining the evidence she expected the jury to hear. She did not inflame the passions of the jury nor did she misstate or overstate the evidence ultimately presented. The comments did not render Petitioner's trial fundamentally unfair. Habeas relief is denied on this claim.

3.      Vouching for Prosecution Witness

Next, Petitioner argues that the prosecutor improperly vouched for Leah Watson's credibility in her opening statement. The prosecutor stated the following about Watson's appearance at the preliminary examination:

> So, she appeared. She told the truth; it was Avern Burnside in that vehicle.
> It was Avern Burnside who was hitting me. Avern Burnside who shot at the
> woman.

*Burnside*, 2014 WL 1515265 at *5.

Prosecutors may not vouch for a witness's credibility. Prosecutorial vouching and an expression of personal opinion regarding the accused's guilt "pose two dangers: such comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; and the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence." *United States v. Young*, 470 U.S. 1, 18-19 (1985).

The Michigan Court of Appeals held that the prosecutor's argument was not improper. The state court recognized the applicable law, including that a prosecutor may not vouch for a witness's credibility or imply that she has some special knowledge about a witness's truthfulness. The state court held that because the prosecutor did not imply some special knowledge, the comment was isolated and, considered in context, meant to chronicle Watson's inconsistent behavior and statements it was not improper. *Burnside*, 2014 WL 1515265 at *5.

The Michigan Court of Appeals reasonably disposed of Petitioner's claim. Even assuming that the Michigan Court of Appeals erred in finding the statement was not improper, the statement did not render the trial fundamentally unfair. The statement was brief, not inflammatory, and jurors were advised that they alone were charged with determining the witnesses' credibility. The court of appeals' decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103.

4.      Testimony from Sergeant Brown

Petitioner argues that the prosecutor committed misconduct by eliciting testimony from Sergeant Brown regarding an incident when he fired his service revolver in the direction of a suspect's fleeing car. Petitioner objects to the following exchange:

Q.      Have you ever shot at a moving vehicle before?

A.      One time.

Q.      Why were you shooting at a moving vehicle[?]

A.      It was an incident when I was working here in April of 1995, an armed robbery.... I exited my vehicle and shot at the person trying to stop them.

Q.      Did you hit him?

A.      No, I didn't.

Q.      Did you mean to?

A.      I was trying to stop him. Yes, I was trying to shoot him.

Q.      Did you mean to kill him?

A.      If he was killed as a result of it, yes, I was trying to stop him.

*Burnside*, 2014 WL 1515265 at *5.

The Michigan Court of Appeals held that Sergeant Brown's testimony was irrelevant and it was improper for the prosecutor to solicit this testimony. *Burnside*, 2014 WL 1515265 at *5. The court, nevertheless did not reverse the convictions because "evidence of [Petitioner's] guilt was compelling." *Id.*

The Court agrees with the Michigan Court of Appeals' determination that this testimony was irrelevant. There are no Supreme Court cases holding that a prosecutor's questions that call for irrelevant evidence constitute prosecutorial misconduct rising to the level of a federal due process violation. *See Wade v. White*, 120 Fed. App'x 591, 594 (6th Cir. 2005). Therefore, the fact that the prosecutor elicited irrelevant testimony from Sergeant Brown does not warrant habeas relief.

5.      Cumulative Effect

Finally, Petitioner argues that the cumulative effect of the multiple instances of

alleged misconduct violated his right to a fair trial. The only error was the prosecutor's questioning of Sergeant Brown and that error was harmless. Accordingly, the state court's rejection of Petitioner's cumulative error argument was not unreasonable.

## B.  Admission of Tape-Recorded Telephone Conversations (Claim II)

Petitioner's second claim concerns the admission of transcribed tape-recorded telephone conversations between Petitioner and Watson. The conversations were tape-recorded during Petitioner's pre-trial incarceration. A short segment of the audiotape was played at trial to allow Watson to identify the voices on the recording as hers and Petitioners. The prosecutor then read transcripts of the telephone conversations. During the conversations, Petitioner advised Watson she should avoid being subpoenaed because Ledesma would recognize her in court. Petitioner argues that the phone conversations were irrelevant, unfairly prejudicial and not authenticated.

The trial court, the last state court to issue a reasoned opinion on this claim, held that the phone conversations were properly admitted. *See* 7/14/2015 Ord. at 2, ECF No. 11-38 at Pg. ID 1118. "Errors by a state court in the admission of evidence are not cognizable in habeas corpus proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994). The conversations were authenticated by one of the participants, Leah Watson, and the state court's conclusion that they were probative of Petitioner's consciousness of guilt is reasonable. Petitioner has failed to show that admission of the transcribed telephone calls violated any right

under the Constitution or denied him his right to a fair trial. Habeas relief is denied on this claim.

## C.     Great Weight of the Evidence (Claim III)

Petitioner argues in his third claim that the verdict was against the great weight of the evidence. This claim is meritless. In Michigan, a trial court may order a new trial "where the evidence preponderates heavily against the verdict and a serious miscarriage of justice would otherwise result." *People v. Lemmon*, 456 Mich. 625, 642 (1998) (internal quotation omitted). The grant of a new trial under these circumstances is distinct from the due process issues raised by insufficient evidence, and "does not implicate issues of a constitutional magnitude." *Id.* at 634 n. 8. Thus, a claim that a verdict is against the great weight of the evidence alleges an error of state law, which is not cognizable on habeas review. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (holding that "federal habeas corpus relief does not lie for errors of state law").

## D.     Ineffective Assistance of Trial Counsel (Claim IV & VIII)

Petitioner raises two ineffective assistance of counsel claims. He argues counsel was ineffective in: (i) failing to object to the prosecutor's misconduct; and (ii) failing to compel the production of exculpatory phone calls from the Genesee County Jail or allow Petitioner hear the taped telephone conversations.

An ineffective assistance of counsel claim has two components. A petitioner must show that counsel's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish deficient

13

representation, a petitioner must demonstrate that counsel's representation "fell below an objective standard of reasonableness." *Id.* at 688. To establish prejudice, a petitioner must show that, but for the constitutionally deficient representation, there is a "reasonable probability" that the outcome of the proceeding would have been different. *Id.* at 694.

Petitioner argues that counsel was ineffective for failing to object to the prosecutor's misconduct. The Michigan Court of Appeals' denial of this claim was neither an unreasonable application of, nor contrary to *Strickland*. First, Petitioner failed to show that the prosecutor presented perjured testimony or that her opening statement was improperly argumentative. Counsel, therefore, was not ineffective in failing to raise a meritless objection to this conduct.

Second, the prosecutor's statement that Leah Watson told the truth was injudicious, but the evidence against Petitioner was substantial and the comment was isolated. The state court held that, even assuming the comment was improper, Petitioner was not prejudiced by counsel's failure to object. The state court's decision is neither contrary to *Strickland* nor an unreasonable application of federal law. Third, the state court did not err in denying Petitioner's claim that counsel was ineffective in failing to object to Sergeant Brown's unrelated testimony about shooting at a fleeing vehicle. The testimony, though irrelevant, was a very small portion of Sergeant Brown's testimony and of the trial as a whole. Petitioner fails to show a reasonable probability that the outcome of the proceeding would have been different had this testimony been excluded. Habeas relief is denied.

Next, Petitioner challenges counsel's handling of the tape-recorded phone calls from the Genesee County Jail. The tape-recorded phone calls were preserved on ten disks. The prosecution produced Disk 4 about two weeks after producing the other nine disks. Petitioner argues that defense counsel should have obtained Disk 4 sooner and that counsel never allowed him to listen to Disk 4. The state court's rejection of this claim as "groundless" was not unreasonable nor was the court's conclusion that Petitioner failed to satisfy *Strickland*'s prejudice prong.

The trial court allowed Petitioner and defense counsel to use his vacant courtroom to privately listen to the disks containing the taped telephone calls on February 1, 2012. *See* 2/1/2012 Tr. at 13-23, ECF No. 11-31, Pg. ID 554-564. At that time, Disk 4 was unavailable. Two weeks later, the prosecution produced Disk 4. *See* 2/15/2012 Tr. at 34, ECF No. 11-32, Pg. ID 601. Defense counsel stated he would arrange for Petitioner to hear the recording. *Id*. Petitioner fails to show defense counsel caused or could have prevented or shortened the delay in Disk 4's production. He also fails to allege how this prejudiced the defense. Defense counsel received the disk approximately one week before trial. Nothing in the record suggests a reasonable probability that earlier production of Disk 4 would have resulted in a different outcome.

Petitioner also asserts that counsel did not allow him to hear the tape before trial. Defense counsel's on-the-record statements to the trial court show his intention and plan to play the tapes for Petitioner. Even assuming this intention did not lead to action, Petitioner fails to show prejudice. He claims that Disk 4 contained exculpatory evidence.

Even if Petitioner did not have access to the recordings, he was aware of their general content because he was a party to the calls. Petitioner fails to allege or identify any exculpatory material. He, therefore, fails to call into doubt the state court's decision denying this claim. Habeas relief is denied on this claim.

### E.    Ineffective Assistance of Appellate Counsel (Claim V)

Petitioner claims that his appellate attorney was ineffective in failing to raise on direct appeal the claims raised in this habeas petition.  A petitioner does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 754 (1983).  Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).

The claims raised in this petition and on collateral review in state court are meritless.  Appellate counsel need not raise non-meritorious claims on appeal. *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (citing *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).  Accordingly, the Court will deny habeas corpus relief on this claim.

### F.    Admission of Opinion Testimony (Claim VI)

Petitioner next alleges that the improper admission of Sergeant Mitch Brown's opinion testimony violated his right to a fair trial.  Sergeant Brown gave his opinion about the behavior of domestic violence victims in general and testified that Leah Watson was a "classic case" of a domestic violence victim. *Burnside,* 2014 WL 1515265 at *1.  The Michigan Court of Appeals, relying on Mich. R. Evid. 701 & 702, and state court precedent, held that the trial court abused its discretion in admitting this testimony. *Id.*  The state court found the error harmless. *Id.*

State-court evidentiary rulings cannot rise to the level of due process violations

unless they offend "'some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Seymour v. Walker*, 224 F.3d 542, 552 (quoting Montana v. Egelhoff, 518 U.S. 37, 43 (1996)) (other internal quotations omitted). Petitioner cites no Supreme Court decision holding that the admission of lay opinion testimony violates due process and the Court is aware of none. *See Armstrong v. Lizarraga,* No. 18-1999, 2019 WL 3253790, *9 (E.D. Cal. July 19, 2019) (finding no clearly established Supreme Court precedent establishing that lay opinion testimony violates due process). Consequently, the admissibility of this evidence is a question of state law, not cognizable on habeas review. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983).

Finally, even if introduction of the lay opinion testimony violated Petitioner's constitutional rights, the error was harmless. On habeas review, an error is considered harmless unless it had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993). Petitioner fails to meet the *Brecht* standard because Sergeant Brown's testimony on domestic abuse was cumulative to Watson's own testimony that Petitioner verbally, physically, and emotionally abused her and Ledesma's testimony about the violence she observed. Watson explained that she did not initially tell Sergeant Brown the truth about Petitioner's actions because she feared Petitioner. Further, the evidence against Petitioner was substantial. In addition to Watson's and Ledesma's testimony implicating Petitioner,

18

Petitioner's jailhouse phone calls with Watson were also incriminating.  Petitioner told

Watson not to get subpoenaed because if she went to court, the victim would likely

recognize her.  Petitioner also told Watson that if he hadn't argued with her, he would not

be in the position he was in.  In light of this evidence, the Michigan Court of Appeals

reasonably determined that admission of Sergeant Brown's opinion testimony was

harmless error.  Habeas relief is denied.

### G.     Other Act Evidence (Claim IX)

Petitioner's ninth claim concerns the admission of other-acts evidence.  The trial

court allowed testimony that, in 2005, Petitioner allegedly shot at Leah Watson when she

was driving away from him after an argument.  The Michigan Court of Appeals held that

the trial court erred in admitting this evidence because it was improper character

evidence, but that the error was harmless.  *Burnside*, 2014 WL 1515265 at *7.  The state

court reasoned that the jury heard ample evidence throughout the trial about Petitioner's

bad character including his physical, verbal, and mental abuse against Watson, his

attempts to convince Watson to avoid being subpoenaed, and his attempts to get Watson

to lie for him.  Petitioner's phone calls with Watson evidenced a consciousness of guilt.

Considering these factors and the substantial evidence of Petitioner's guilt, the state found

the error harmless.  *Id.*

"There is no clearly established Supreme Court precedent which holds that a state

violates due process by permitting propensity evidence in the form of other bad acts

evidence."  *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).  The Supreme Court has

discussed when other acts testimony is permissible under the Federal Rules of Evidence, see *Huddleston v. United States*, 485 U.S. 681 (1988), but has not addressed the issue in constitutional terms, finding such are more appropriately addressed in codes of evidence and procedure than under the Due Process Clause. *Dowling v. United States*, 493 U.S. 342, 352 (1990). Consequently, there is no "clearly established federal law" to which the state court's decision could be "contrary" within the meaning of section 2254(d)(1). *Bugh*, 329 F.3d at 513.

"Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation." *Dowling*, 493 U.S. at 353. The rule regarding the admissibility of evidence and due process is "exceedingly general." *Desai v. Booker*, 732 F.3d 628, 631 (6th Cir. 2013). "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations ... and, it follows, the less likely a state court's application of the rule will be unreasonable." *Id.*

As the state court held, there was substantial evidence of Petitioner's guilt. Given this evidence, Petitioner fails to show that admission of other act evidence denied him a fair trial.

**H.    Right to Speedy Trial (Claim X)**

In his tenth claim, Petitioner argues that his right to a speedy trial was violated by the lengthy delay between his arraignment and trial.  He also argues that defense counsel was ineffective for failing to move to dismiss on speedy trial grounds.

The Sixth Amendment guarantees a criminal defendant the right to a speedy trial. U.S. Const. amend. VI.  Courts must balance the following four factors in determining whether a defendant's constitutional right to a speedy trial has been violated:  (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his or her right to speedy trial; and (4) prejudice to the defendant.  *Barker v. Wingo*, 407 U.S. 514, 528 (1972).  The Sixth Amendment's Speedy Trial Clause does not extend to the period prior to arrest.  *United States v. Marion*, 404 U.S. 307, 321 (1971); *United States v. MacDonald,* 456 U.S. 1, 7 (1982).  Accordingly, the relevant inquiry for a speedy trial analysis is the time between arrest and trial.   "[U]ntil there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other facts that go into the balance."  *Barker*, 407 U.S. at 530.  Generally, depending on the nature of the charges, a delay that approaches one year is presumptively prejudicial.  *Doggett v. United States,* 505 U.S. 647, 652 n. 1 (1992).

The Michigan Court of Appeals, although not specifically citing *Barker*, applied the factors set forth in *Barker*, and denied Petitioner's speedy trial claim.  The state court held that Barker's first factor – the length of the delay, in this case, 27 months – weighed in Petitioner's favor.  Because the delay was over 18 months, the Michigan Court of

Appeals found the delay presumptively prejudicial and considered the remaining *Barker* factors.

The Michigan Court of Appeals held that the second factor – the reason for the delay – weighed against the Petitioner because his own actions contributed to nearly all the delays. *Burnside*, 2014 WL 1515265 at *9. The primary reason for the lengthy delay was the time needed to transcribe the jailhouse telephone recordings and defense counsel did not want to proceed without the transcripts. The defense further contributed to the delays by requesting a competency evaluation and requesting that the trial be postponed until the Michigan Court of Appeals addressed Petitioner's *pro se* complaint for superintending control. *Id.*

Petitioner did not assert his right to a speedy trial and the court of appeals weighed this factor against him. Finally, the state court held Petitioner was not prejudiced by the delay and, therefore, weighed the last factor against him. *Id.*

The state court's application of *Barker* was neither contrary to nor an unreasonable application of Supreme Court precedent. 28 U.S.C. § 2254(d)(1). The delay, while long, was not the result of bad faith or an attempt to gain a tactical advantage. Petitioner argues that he was prejudiced by the delay because a letter allegedly written by Leah Watson was excluded when Watson could not recall if she wrote the letter or when. In the letter, Watson apologized for her role in Petitioner's arrest. The Michigan Court of Appeals reasonably concluded that the substance of this alleged letter (Watson blaming herself for Petitioner's arrest) was conveyed to the jury in the tape-recorded jailhouse phone

conversations. It is unclear how this letter would have bolstered the defense. Petitioner fails to allege any other specific prejudice from this delay. Habeas relief is denied on this claim.

Relatedly, Petitioner argues that counsel was ineffective for failing to assert Petitioner's right to a speedy trial. Because petitioner was not denied his right to a speedy trial, trial counsel was not ineffective for failing to move for dismissal of the charges on speedy trial grounds. Defense counsel cannot be said to be ineffective for failing to bring a speedy trial motion that is meritless. *See Shanks v. Wolfenbarger*, 387 Fed. Supp. 2d 740, 750 (E.D. Mich. 2005). Petitioner is not entitled to habeas relief on this ineffective assistance of counsel claim.

## I.     Cumulative Effect of Alleged Errors (Claim XI)

Finally, Petitioner asserts that he is entitled to habeas relief based upon cumulative error. The Court rejects Petitioner's claim because the Supreme Court has never held that cumulative errors may form the basis for issuance of a writ of habeas corpus. *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002). *See also Daniels v. Jackson*, 2018 WL 4621942, *6 (6th Cir. July 17, 2018) (("'[T]he law of [the Sixth Circuit] is that cumulative error claims are not cognizable on habeas [review] because the Supreme Court has not spoken on this issue.'") (quoting *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006)). This cumulative-error claim, therefore, is not cognizable on habeas corpus review. *Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir. 2011) (citing *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005)).

## IV.    Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253.  A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. §2253(c)(2).  A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation omitted).

The Court concludes that reasonable jurists would not debate the Court's disposition of Petitioner's claims.  Thus, the Court denies a COA.

## V.    Conclusion

The Court DENIES the petition for a writ of habeas corpus.  The Court further DENIES a certificate of appealability.

SO ORDERED.

 s/ Victoria A. Roberts
VICTORIA A. ROBERTS
UNITED STATES DISTRICT JUDGE

DATED: 8/28/19